JS-6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

JULIE A. SU,
Acting Secretary of Labor,
United States Department of Labor,

                              Plaintiff,

        v.

SPECIAL UNIT SECURITY, INC., a
California Corporation; and EDMON
MURADYAN, an individual,


                              Defendants.

Case No: 2:24-cv-10854-CBM-JPR

**CONSENT JUDGMENT AND
PERMANENT INJUNCTION**

Plaintiff Julie A. Su, Acting Secretary of Labor, United States Department of Labor ("Acting Secretary"), and Defendants Special Unit Security, Inc. ("SUS"), and Edmon Muradyan ("Muradyan"), (together, "Defendants") have agreed to resolve the matters in controversy in this civil action, and, together with party-in-interest Lusine Kalemdaryan ("Kalemdaryan"), agree to the entry of this Consent Judgment and Injunction ("Consent Judgment") as provided below.

## STATEMENTS BY AND AGREEMENTS BETWEEN THE PARTIES

A.     Concurrently with this Consent Judgment, the Acting Secretary is filing her Complaint in the above-captioned proceeding, naming Defendants and alleging they violated provisions of Sections 7, 11(a), 11(c), and 15(a)(2), (3), (5) of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, 211(a), 211(c), 215(a)(2), (3), and (5).

B.     Defendants waive issuance and service of the Summons and Complaint and waive their response to the Acting Secretary's Complaint.

C.     Defendants admit that the Court has jurisdiction over the Parties and the subject matter of this civil action, and that venue lies in the Central District of California. Defendants make no other admissions.

C.     The Parties agree to waive findings of fact and conclusions of law and agree to the entry of this Consent Judgment without further contest.

D.     Defendants agree herein to resolve all allegations of the Acting Secretary's Complaint.

E.     Defendants represent that they and all individuals and entities acting on their behalf or at their direction have notice of, and understand, the provisions of this Consent Judgment.

F.     Defendants acknowledge that violating any provision of this Consent Judgment and Permanent Injunction may subject them to fines and penalties, including punitive damages, heightened civil monetary penalties, or contempt.

G.    Defendant Special Unit Security, Inc. is currently a party to a bankruptcy proceeding before the United States Bankruptcy Court, Central District of California, Los Angeles Division, Case Number 2:22-bk-15668-VZ.  Defendant Special Unit agrees that the exception to the automatic bankruptcy stay set forth at 11 U.S.C. § 362(b)(4) applies because Special Unit Security is being named in this action for prospective injunctive relief only.

H.    Defendant Muradyan agrees to secure the monetary component of this Consent Judgment by executing a deed of trust in a property for which he and Kalemdaryan are joint tenants and sole owners.  Kalemdaryan is signing this consent judgment and agrees to execute the deed of trust for purposes of securing this Consent Judgment. Kalemdaryan also agrees to cooperate and take any action necessary to effectuate the sale of the property and perfecting and executing on the deed of trust.  and is therefore a signatory to this Consent Judgment.

## PERMANENT INJUNCTION

Pursuant to the statements and agreements above, upon joint motion of the attorneys for the Parties, and for cause shown,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, Defendants, their agents, servants, employees, companies, and all persons and entities acting at their direction or in concert or participation with their direction, are permanently enjoined and restrained from violating the FLSA, including through any of the following manners:

1.    Contrary to Sections 6 and 15(a)(2) of the FLSA, paying any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce within the meaning of the FLSA, wages at a rate less than the operative minimum wage, which cannot be less than $7.25 per hour (or at a rate less than such other applicable minimum rate as may hereafter be established by amendment to the FLSA).

2.      Contrary to Sections 7 and 15(a)(2) of the FLSA, paying any of their employees who in any workweek are engaged in commerce or in the production of goods for commerce or who are employed in an enterprise engaged in commerce within the meaning of the FLSA, less than one and half times the particular employee's regular hourly rate for hours in excess of 40 hours in a workweek.

3.      Contrary to Sections 11(c) and 15(a)(5) of the FLSA, failing to make, keep, and preserve records of their employees and of the wages, hours and other conditions and practices of employment maintained by them, as prescribed by the regulations issued, and from time to time amended, pursuant to Section 11(c) of the FLSA and found in 29 C.F.R. Part 516, including for each employee, the hours worked each day and each workweek, the employee's regular hourly rate of pay, total daily or weekly straight time earnings, overtime rate of pay, total premium pay for overtime hours and identification of each deduction made from the employee's earnings along with a description of the basis/reason and method of calculation of the deduction.

4.      Contrary to Section 15(a)(3) of the FLSA, engaging in any retaliatory action, such as discharging or in any other manner discriminating against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under the FLSA, has testified or is about to testify in any such proceeding, or has otherwise exercised their rights under the FLSA by, among other things, testifying or otherwise reporting information to the Acting Secretary, or questioning whether the employer is paying the employee in compliance with prevailing law. Prohibited discriminatory and retaliatory actions include telling employees that communication with the Acting Secretary will result in immigration, legal, criminal or other action against them and/or otherwise deterring employees from cooperating with or speaking to the Acting Secretary's representatives through threats, bribes or intimidation.  Termination; discharge; layoffs; threats of termination, discharge or lay off; reverifying the employment

eligibility of an employee Defendants unlawfully terminated; reduction to employees' work schedules or wages; intimidation; failure to hire; and providing negative references are prohibited if done in retaliation for an employee's protected activity.

5.    Defendants, their agents, servants, and employees, and any person in active concert or participation with them, shall not in any way directly or indirectly, demand, require, or accept any of the back wages, monetary damages, or liquidated damages from the individuals listed on the operative Exhibit A. Defendants shall not request, solicit, suggest, or coerce, directly, or indirectly, any employee to return or to offer to return to Defendants or to someone else on behalf of Defendants, any money in the form of cash, check, or any other form, for wages previously due or to become due in the future to said employee under the provisions of this judgment, or the FLSA, unless otherwise authorized by law . Defendants shall not threaten or imply that adverse action will be taken against any employee because of their receipt of funds to be paid under this Consent Judgment. Violation of this Paragraph may subject Defendants to equitable and legal damages, including punitive damages and civil contempt.

6.    Defendants shall not demand or require employees to purchase any work-related items, such as mace, tasers, or other weapons, nor any training, or other goods or services from Defendants, nor shall Defendants instruct or require employees to purchase any type of goods or services from any specific vendor. Defendants may offer work-related items for sale to employees only if employees are informed through a written notice, such as a sign posted in the worksite, and through bi-annual workplace-wide announcements that they are free to purchase such work-related items from a vendor of their own choosing. Defendants shall not require employees to pay for employer mandated training. Notwithstanding the above, Defendants may require employees to purchase Defendants' company-issued uniform, only if the cost of company-issued uniform deducted from the pay earned

in the pay period(s) during which the uniform is purchased does not reduce any employee's regular rate below the federal minimum wage.

7.      Defendant Muradyan shall not withhold payment of $170,000.00, which constitutes the back wages found to be due by the Defendants under the FLSA to the employees, who are identified by name in Exhibit A, which is incorporated in and made part of this Consent Judgment.

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that, pursuant to Section 17 of the FLSA, 29 U.S.C. § 217, Defendants, their agents, servants, employees, companies, and all persons and entities acting at their direction or in concert or participation with their direction, shall take the following affirmative actions:

8.      Within fourteen (14) days of entry of this Consent Judgment, Defendants shall ensure that a copy of this Consent Judgment and all Exhibits is posted in any centralized work area, such as an employee breakroom or Defendant's main corporate office, where employees can easily see the Consent Judgment. Within fourteen (14) calendar days of posting the package in the worksite, Defendants shall send photographs to a Wage and Hour representative demonstrating that this provision has been adhered to.

9.      Within twenty-one (21) calendar days of the date of entry of this Consent Judgment, Defendants shall send a package consisting of a copy of the Notice of Rights attached hereto as Exhibit B, followed in sequence by a copy of this Consent Judgment, to all current employees, including all security guards, supervisors, or other management officials. If any of Defendants' employees are not proficient in English, Defendants shall have this Consent Judgment and Exhibit B translated into a language those non-English speaking employees understand and shall send the translated copies together with the original English-language copies to those non-English speaking employees.

10.    For a period of at least two (2) years from the date of entry of this Consent Judgment, Defendants shall ensure that a copy of this Consent Judgment and Exhibit B is provided to the following persons or entities and in a language understood by the recipient as follows:

a.    all Defendant SUS's future employees upon retention of those employees, where those employees are hired or rehired following the entry of this Consent Judgment;

b.    all persons or entities providing security guard labor or payroll services to Defendants or their security guard business operations;

c.    all businesses that retain security guard services from Defendants; and

d.    any individual or entity responsible for hiring, firing, supervising, paying, or otherwise managing Defendants' security guard employees.

11.    Defendants are specifically enjoined from taking any action to restrict or blacklist an employee from obtaining work from a third party because of that employee's actual or perceived protected activity.

12.    Defendants have an ongoing duty to provide the Acting Secretary with access to all records required to be made, kept, or preserved under Section 11 of the FLSA, including all other time, employee, and payroll records, upon request and no later than thirty (30) calendar days after such request is made.

13.    For a period of two (2) years from the date of entry of this Consent Judgment, Defendant SUS must immediately notify and inform the Acting Secretary of any change to its business name or corporate form, the location where it operates, and the retention or allowance of any other business or entity to manage employees. Defendant Edmon Muradyan must immediately notify and inform the Acting Secretary should he form, manage, purchase, or otherwise come into operation of any business that provides security guard services, other than Defendant Special Unit Security, Inc. Defendants must also inform the Acting Secretary of any changes to

their contact information. Defendants must notify the Acting Secretary of any such changes no later than thirty (30) calendar days after any such changes have taken effect.

14.    Defendants have an ongoing duty to comply with the FLSA and maintain payroll practices at any business they own, operate, or control, currently and in the future, as follows:

a.    Defendants shall accurately record the information required by 29 C.F.R. § 516.2 in the payroll records, including, for each employee (1) all hours worked by each workday and workweek; (2) all pre- and post-shift work such as maintaining clothing, tools, and supplies, donning and doffing, and any training that Defendants require employees to attend, to the extent Defendants require such conduct or such conduct is performed as an integral part of the employees' principal job activities and is required by Defendants, unless otherwise exempt by federal law; (3) the rate(s) of pay for each of the hours worked during a workweek; (4) the total weekly straight-time earnings due for the hours worked during the workweek; and (5) the total premium pay for overtime hours;

b.    Defendants shall record all wages paid to employees, regardless of the manner of payment, on payroll records;

c.    Defendants shall not alter or manipulate time or payroll records to reduce the number of hours actually worked by an employee, and Defendants shall not encourage workers to under-report their hours worked; and

d.    Defendants shall not direct supervisors, employees, or payroll preparers to falsify time or payroll records in any manner including reducing the number of hours worked by employees, and Defendants shall direct supervisors and payroll providers to encourage workers to report all hours worked.

15.    Defendants have an ongoing duty to provide an earnings statement to each of their employees, and ensure that any employee, beginning with the first paycheck issued following entry of this Consent Judgment, is provided with the

following information: (1) gross wages paid to the employee each workweek; (2) total hours worked each workweek; (3) a list of itemized deductions from employees' pay; (4) net wages earned; (5) the inclusive start and end dates of the pay period; (6) the employee's name and employee identification number; (7) the applicable hourly rates (including straight time and overtime rates) and corresponding number of hours worked at each hourly rate; (8) total straight-time wages paid; and (9) total overtime wages paid. Defendants shall produce these earnings statements to the Acting Secretary upon request and no later than thirty (30) calendar days after such request is made.

16.     All documents produced by Defendants as required under this Consent Judgment must be produced in an electronic, searchable format to the extent Defendants' documents are maintained or may be generated in such a format. If a document is neither maintained nor may be generated in an electronic, searchable format, then Defendants shall produce the document in an electronic format with all metadata intact to the extent such metadata exists. If a subject document is not regularly maintained in any electronic format, Defendants shall make the documents available to the Acting Secretary for inspection and copying.  If a subject document is produced in a comma-separated-values ("CSV") file, such as an Excel spreadsheet, then the documents must be produced in such format and not converted to a PDF. Documents must be organized in a manner that clearly identifies the nature of the documents.

17.     At least once a year, and no more than twice a year, for two (2) years following entry of this Consent Judgment, Defendants will permit the Department of Labor's Wage and Hour Division ("Wage and Hour") to speak to Defendants' employees, including supervisors, at a time and manner determined by Wage and Hour and without requiring prior notification to Defendants, to confirm that Defendants are complying with the FLSA and with this Consent Judgment and to answer any questions Defendants' employees may have about their rights under the

FLSA. This time shall be compensable time for which employees shall receive pay. Defendants consent to the Wage and Hour Division speaking to Defendants' employees, including supervisors, without Defendants or their representatives present.

18.    Any successors-in-interest of any kind to Special Unit Security, Inc., from the execution of this Consent Judgment through February 28, 2027, shall be given a copy of this Consent Judgment. Further, Defendants shall, in any sale of any kind of Special Unit Security, Inc., either in whole or in part, include as one of the written contractual terms for such sale that: "any successors-in-interest to Special Unit Security, Inc. will be given a copy of and must fully adhere to the 2024 Consent Judgment in *Su v. Special Unit Security, Inc.* (C.D. Cal.) covering the FLSA violations from April 17, 2020 to November 15, 2024."

19.    For purposes of contacting the Acting Secretary under the terms of this Consent Judgment, Defendants may contact counsel for the Acting Secretary and shall notify: District Director, Wage Hour Division, Los Angeles District Office, 312 Spring Street, Suite 701, Los Angeles, California 90012.

## JUDGMENT

20.    **JUDGMENT IS HEREBY ENTERED,** pursuant to Section 16(c) of the FLSA, in favor of the Acting Secretary as a judgment owed to the United States of America and against Defendant Muradyan in the total amount of $340,000.00. Defendant Muradyan shall pay the $340,000.00 owed under this Consent Judgment in full within forty-five (45) days of entry of this Consent Judgment. This total amount comprises $170,000.00 in unpaid overtime compensation owed by Defendant Muradyan and, pursuant to authority expressly provided in Section 16 of the FLSA, 29 U.S.C. § 216, and an additional equal amount as liquidated damages of $170,000.

Pursuant to this Judgment, **IT IS HEREBY ORDERED THAT:**

21.    Defendant Muradyan shall obtain financing to pay the judgment amount within 45 days of entry of this Consent Judgment. If Defendant Muradyan cannot obtain such financing and pay the judgment amount within 45 days of entry of this Consent Judgment, Defendant shall sell the Property as specified in Paragraph 24.  During the sale process, Defendant Muradyan shall make six (6) payments of $5,000, plus monthly interest of 4% per annum of the outstanding balance, as specified in the table below, with the first payment starting 60 days from the date of entry of this judgment and each subsequent payment 30 days thereafter.

| Payment Number | Principal Payment | Interest Payment | Total Payment |
|---|---|---|---|
| 1 | $3,866.67 | $1,133.33 | $5,000.00 |
| 2 | $3,879.56 | $1,120.44 | $5,000.00 |
| 3 | $3,892.49 | $1,107.51 | $5,000.00 |
| 4 | $3,905.46 | $1,094.54 | $5,000.00 |
| 5 | $3,918.48 | $1,081.52 | $5,000.00 |
| 6 | $3,931.54 | $1,068.46 | $5,000.00 |
| 7 | $316,605.81 | | |

22.    Within fourteen (14) days of entry of this Consent Judgment, Defendant Muradyan and Kalemdaryan shall execute the deed of trust to secure the payment described in Paragraphs 21 and 22. The deed of trust shall be recorded against the real property commonly known as 28229 Shirley Lane, Santa Clarita, CA 91350 ("Property") and which is attached hereto as **Exhibit C**. Defendant Muradyan and Kalemdaryan represent that they own the Property as joint tenants, are the sole owners of the Property, have authority to execute the deed of trust attached hereto as **Exhibit C**, and attest that the Property is not encumbered except for a mortgage in the original principal amount of $472,500 from Golden West Alliance, Inc., recorded on December 8, 2020, as document number 20-1602905. The Acting Secretary shall record the deed of trust attached as **Exhibit C** once signed. Defendant

Muradyan and Kalemdaryan agree not to further encumber the Property until the deed of trust is recorded, with the exception of a home equity line of credit to fund this settlement in accordance with Paragraph 21. Defendant Muradyan and Kalemdaryan further agree to immediately take all necessary actions to cure the deed of trust in the event it is deemed defective. Within fourteen (14) business days of Defendant Muradyan paying the entire amount due under this Consent Judgment, the Acting Secretary shall execute a full reconveyance and provide to Defendant Muradyan through counsel.

23.    Should Defendant Muradyan fail to obtain financing or otherwise pay in full within forty-five (45) days of entry of the Consent Judgment, Defendant Muradyan and Kalemdaryan shall immediately undertake their best efforts to sell the Property to satisfy the amounts due under this Consent Judgment. Defendant Muradyan and Kalemdaryan shall fully market and list the Property for sale within 100 days of entry of this Consent Judgment (65 days following failure to pay in full per Paragraph 21). If the Property is not sold within ten months from the date of this judgment, the trustee named in the deed of trust shall sell the Property. Defendant Muradyan and Kalemdaryan agree to cooperate with the trustee sale of the Property and fully cooperate in any such sale and execute any documents necessary to effectuate the sale.

24.    Should Defendant Muradyan's failure to pay in full per Paragraph 21 trigger the obligation to sell the Property per Paragraph 22, Defendant Muradyan shall provide a written update to counsel for the Acting Secretary describing efforts he and Kalemdaryan have taken toward sale of the Property within thirty (30) days of their failure to pay in full, and in thirty (30) day increments thereafter.

25.    Muradyan shall pay the outstanding balance (the original judgment amount plus any accrued interest less any payments made) to the Acting Secretary within five (5) business days of the closing of the sale of the Property.

26.    Should the proceeds of the sale specified in Paragraph 22 and the

monthly payments be less than the entire amount due under this Consent Judgment, Defendant Muradyan remains liable for any shortfall which is due and payable within thirty (30) days of the completion of the sale.   Should the proceeds from the sale of the Property exceed the entire amount due under this Consent Judgment, these additional funds remain the sole property of Defendant Muradyan and Kalemdaryan and the Acting Secretary shall have no interest in those funds.

27.    Defendant Muradyan must make payment required by this Consent Judgment online by ACH transfer, credit card, debit card, or digital wallet by going to https://www.pay.gov/public/form/start/77761888, or by going to www.pay.gov and searching "WHD Back Wage Payment - WE Region". Payment shall reference BW Case Number 1975302.

28.    In the event of any default in the timely making of payment due hereunder, the full amount due under the back wage and liquidated damages provisions of this Judgment which then remains unpaid, plus post-judgment interest at the rate of 10% per year, from the date of this Judgment until paid in full, shall become due and payable once the Acting Secretary's makes a demand for the unpaid remainder upon Defendant Muradyan, or, if applicable, their counsel.

29.    Within ten (10) business days of entry of the Consent Judgment, Defendants agree to provide the Acting Secretary 1) Defendant's EIN and 2) the individual and physical address to whom the Acting Secretary should mail the copy of the Form 1098-F, if the Acting Secretary is required to issue one.

30.    The Acting Secretary shall distribute the proceeds from the settlement payment described in Paragraphs 21 and 22 to the employees identified in Exhibit A, less deductions for employees' share of payroll taxes and income tax withholding on the back wage amounts, to the employees identified therein, or if necessary, to the employees' estates. Any monies not distributed to employees within three (3) years from the date of the Acting Secretary's receipt of the settlement payment,

because of an inability to locate the proper persons or because of their refusal to accept it, the Acting Secretary shall deposit the payment into the Treasury of the United States as miscellaneous receipts under 29 U.S.C. § 216(c). The Acting Secretary will follow its regular process for calculating and forwarding the employee portion of the payroll taxes and filing the necessary forms with the IRS and providing a copy of reportable forms to the Defendants. **FURTHER, IT IS HEREBY ORDERED THAT**

31.    The filing, pursuit, and/or resolution of this proceeding with the entry of this Consent Judgment shall not act as or be asserted as a bar to any action or claim under FLSA § 16(b), 29 U.S.C. § 216(b), as to any employee not named on the attached Exhibit A, nor as to any employee named on the attached Exhibit A for any period outside of April 17, 2020 to November 15, 2024, nor as to any employer other than Defendants.

32.    Each Party shall bear its own fees and other expenses incurred by such Party in connection with any stage of this proceeding, including but not limited to attorneys' fees, which may be available under the Equal Access to Justice Act, as amended.

33.    The Court shall retain jurisdiction of this action for purposes of enforcing compliance with the terms of this Consent Judgment.

IT IS SO ORDERED

Dated: January 2, 2025

Consuelo B. Marshall
United States District Judge

**SO STIPULATED AND AGREED:**

For Defendants:

Dated: 12/14/24

Edmon Muradyan
Defendant in his personal capacity

Dated: 12/14/24

Edmon Muradyan
Defendant as agent of Special Unit, Inc.

For party-in-interest Lusine Kalemdaryan:

Dated: 12/14/24

Lusine Kalemdaryan
In her personal capacity

For the Acting Secretary:

Dated:  December 17, 2024

MARC A. PILOTIN
Regional Solicitor

BORIS ORLOV
Counsel for Wage and Hour

_____

NISHA PAREKH
Senior Trial Attorney

# EXHIBIT A

*First Name, Last Name*

1.      Cesar Abarca

2.      Jose Acero

3.      Rafael Acuna

4.      Inocenio Aggalut

5.      Rico Agguirre

6.      Isai Aguilar

7.      Rasheed Aikkari

8.      Juan Alcatar

9.      Alejandro Alfaro

10.     Adonis Alfaro-Carrillo

11.     Christian Alvarado

12.     Enrique Alvardo

13.     Alvaro Alvarez

14.     Ivan Andrade

15.     Nelson Andrade

16.     Roman Andrade

17.     Alferd Aranda

18.     Dalton Ardoin

19.     Shahbazian Argin

20.     Charles Baker

21.     Malik Beasley

22.     Rodter'vion Blackburn

23.     Brian Bolian

24.     Aaron Bradford

25.     Keishon Bradford-Craney

26.     Oscar Briseno Gutierrez

27. Joshua Brown

28. John Butler

29. Jonas Cabal

30. Luis A Caceres

31. Rashad Carroll

32. Curtis Carter

33. Duncan Carter

34. Frank Cephas

35. Herman Chamblee

36. Holmes Chavez

37. David Contreras

38. Mario Cornejo

39. Joshua Cornejo

40. Erving Da La Torre

41. Darwin Destre

42. Hugh Doswell

43. Sergio Duarte

44. Jose Esparza

45. Pedro Esperanza

46. Andrew Espinoza

47. Ricardo Espinoza

48. Jay Estes

49. Fountain Evron

50. Chidozie Eze

51. Kristopher Faber

52. Jason Efrain Flores

53. Guillermo Flores

54. Raul Flores Nunez

| 1 | 55. | Aubry Fredrick |
| 2 | 56. | Felipe Jr. Gallegos |
| 3 | 57. | Daniel James Gallocker |
| 4 | 58. | Sergio Garay |
| 5 | 59. | Edward Garcia |
| 6 | 60. | Kenneth Garcia |
| 7 | 61. | Lizbeth Garcia |
| 8 | 62. | Miguel Garcia |
| 9 | 63. | Rolando Garcia |
| 10 | 64. | Kam Gomez |
| 11 | 65. | Gabriel Gonzales |
| 12 | 66. | George Gonzales |
| 13 | 67. | Isaac Gonzalez |
| 14 | 68. | Mariel Gonzalez |
| 15 | 69. | Victor Gonzalez |
| 16 | 70. | Adam Granberry |
| 17 | 71. | Kevin Grigsby |
| 18 | 72. | Darline Guerrero |
| 19 | 73. | Martin Hamparsumian |
| 20 | 74. | Marlin Hankins |
| 21 | 75. | Taylor Hansen |
| 22 | 76. | James Harp |
| 23 | 77. | Rudy Harron |
| 24 | 78. | Errol Hastings |
| 25 | 79. | Demaje Hayden |
| 26 | 80. | Aaron Henderson |
| 27 | 81. | Adolfo Hernandez |
| 28 | 82. | Brayan Hernandez |

| | |
|---|---|
| 1 | 83. Miguel Hernandez |
| 2 | 84. Welner J Hernandez |
| 3 | 85. Oscar Perez Herrera |
| 4 | 86. Aaron Richard Hurst |
| 5 | 87. David Ivy |
| 6 | 88. Paul Johnson |
| 7 | 89. John Jones |
| 8 | 90. DeJuan Jones |
| 9 | 91. Osorio Juan |
| 10 | 92. Jovell Kelley |
| 11 | 93. Ralph Kurihara Jr |
| 12 | 94. David Kwan |
| 13 | 95. Demontay Kyle |
| 14 | 96. Jeremiah Lasster |
| 15 | 97. Malloroy Lee |
| 16 | 98. Gilberto Leon |
| 17 | 99. Gonzalo Lepe |
| 18 | 100. Eddie Lopez |
| 19 | 101. Isidro Mendez Lopez |
| 20 | 102. Kevin Corea Lopez |
| 21 | 103. Miguel Lopez |
| 22 | 104. Ruben Lopez |
| 23 | 105. Walter Lopez |
| 24 | 106. Gene Lucero |
| 25 | 107. Carlos Luis |
| 26 | 108. Alexis Luna |
| 27 | 109. Ramiro Luna |
| 28 | 110. Stephen Marquez |

111. Fabin Martin
112. Joseph Martinez
113. Kaven Martinez
114. Joseph Mason
115. Juan Matus
116. William Mayo
117. Trynell Mcbride
118. Justin Meece
119. Jose Mendoza Rivas
120. Sergio Meza
121. Dontaye Milligan
122. Ludvig Mkrtchyan
123. Washington Montrell
124. Justin Morales
125. Ryan Morales
126. Gustavo Morentin
127. Jose Munguilla
128. Nelson Munguilla
129. Fernando Murillo
130. Marco Murillo
131. Mikaela Murillo
132. Jay Navarro
133. Ronnie Nazarian
134. Evan Nelson
135. Asher Neri
136. Eric Nguyen
137. Marlen Noriega
138. Erik Okamoto

139. Anthony Palacios

140. Theresa Panton

141. Marc Paraiso

142. Bryson Parham

143. Jocelyn Parham

144. Daniel R. Pearson

145. Robert Peralta

146. Ashley Perez

147. Brian Perez

148. Christopher Perez

149. Jonathan Perez

150. Timothy Pimental

151. Andres Pitre

152. Derek Pollard

153. Bryan Quiroz Luna

154. Munir Rashada

155. Parvis Recinos

156. Javier Reyes

157. Alexander Rhodes

158. Jose Rivas

159. Edwin Rivera

160. Griselda Rivera

161. Ariel Rivera

162. Rudy Rodriguez

163. Holmes Rosa

164. Maria Ruiz

165. Alejandro Salas

166. Andrew Sanchez

167. Josue Sanchez

168. Steve Sanchez

169. Tyrone Sanchez

170. Juan Sandoval

171. Oscar Santigo

172. Itielu Satele

173. Aurthur Semilla

174. Calvin Shaw

175. Michael Smith

176. Eric Solorzano

177. Jonathan Sosa

178. Charles Stewart

179. Bryan Stimpson

180. Udeh Sunday

181. Jeff Surga

182. Michael Tillis

183. Jason Tipeni

184. Mario Torres

185. Edgar Torrevillas

186. Daniel Tovar

187. Juan Trejo

188. Antonio Udarbe

189. Ramona Udarbe

190. Eddie Valdez

191. Rogelio Valenzuela

192. Alexander Valiente

193. Frank Rolando Valiente

194. Francois Valsin

195. Miguel Vasquez

196. Abraham Ventura

197. Emmanuel Vinson

198. Jeremiah Walker

199. David Walton

200. Joshua Warren

201. Deon Washington

202. Diwan Williams

203. Michael Wolfe

204. Terrel Wright

# EXHIBIT B

## YOUR RIGHTS UNDER THE FLSA

The U.S. Department of Labor ("DOL") and your employer have reached an agreement to resolve the Department's investigation under Fair Labor Standards Act (FLSA) into your employer's pay practices. As part of this settlement agreement, your employer has agreed to share this sheet with you to educate you on your rights.

### Minimum Wage

If you work 40 hours a week or less, your employer must pay you the prevailing local minimum wage. Under federal law (the county you live in may have a higher minimum wage rate), your employer cannot pay you less than $7.25 per hour, for all hours worked under 40 in a single week.

### Overtime Pay

Under federal law, if you work more than 40 hours per week, your employer must pay you 1.5 times your hourly rate or the California state or local minimum wage, whichever is higher, for all hours that you work.

- Federal overtime pay is in addition to your normal hourly pay and must be 50 percent of your normal hourly pay or the California state or local minimum wage, whichever is higher, for each hour that you work.

- Starting January 1, 2024, the California minimum wage will be $16.00 for employees at your workplace.

- For example, if you worked for an employer in California, your hourly rate was $16.00 an hour, and you worked 50 hours in a week, you would be owed:

  - o Your normal pay for each hour (also known as "straight time"), which is $16.00. For the 40 hours you worked that do not get the overtime premium, you are owed: $16.00 x 40 = $640.00.

  - o Because you worked 10 hours more than 40 hours, and your hourly rate ($16.00) is higher than the federal minimum wage and equals the state minimum wage, the overtime pay for each hour under federal law would be: $16.00 x 1.5 x 10 = $240.00.

  - o Your total weekly pay would therefore be $640.00 + $240.00 = $880.00. This example does not account for any state or local overtime wages that you may be entitled to.

### Accurate Recordkeeping

- Your employer must maintain accurate records of each hour you work, and all pay you receive.

- You are entitled to receive pay stubs or other documentation containing an accurate accounting of all hours you have worked, and all pay you have received.

### Anti-Retaliation

- Your employer cannot threaten you or take action against you for speaking to a DOL representative, participating in a DOL legal case, or exercising your FLSA rights.

- **It is illegal for anyone to harm you because you talked to a DOL representative, participated in a DOL legal case, or spoke up about your FLSA rights. It is illegal for your employer to take the following actions because you exercised your FLSA rights:**

  - o Fire you or any friends or relatives that work with you;
  - o Refuse to pay you for all hours you work;
  - o Refuse to hire a relative of yours;
  - o Report you to the government for deportation;
  - o Reduce your work hours or the amount you earn;
  - o Threaten you with legal problems or threaten to use their lawyer to harm you;
  - o Make any other threat or take any harmful action against you.

**These laws apply to you regardless of your immigration status**

**If any of these actions occur, please immediately contact the DOL at (213) 894-6375**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**EXHIBIT C**

RECORDING REQUESTED BY:
United States Department of Labor
Office of the Solicitor
Attn: Andrew M. Katz, Senior Trial Attorney
312 N. Spring Street, Room 720
Los Angeles, CA  90012-4701

WHEN RECORDED MAIL TO:
United States Department of Labor
Office of the Solicitor
Attn: Boris Orlov, Counsel for Wage & Hour
312 N. Spring Street, Room 720
Los Angeles, CA  90012-4701

*United States Department of Labor v. Special Unit Security, Inc.*
Civil Case No. 2:24-cv-10854

# DEED OF TRUST

This Deed of Trust, made this ____ day of _____, 202__, between Edmon Muradyan and Lusine Kalemdaryan, herein called TRUSTORS, whose address is 28229 Shirley Lane, Santa Clarita, CA 91350, FIRST AMERICAN TITLE COMPANY LOS ANGELES, a California Corporation, herein called TRUSTEE, and UNITED STATES DEPARTMENT OF LABOR, herein called BENEFICIARY.

Witnesseth: That TRUSTOR IRREVOCABLY GRANTS, TRANSFERS, AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in Los Angeles County, California, described as:

ATTACHED HERETO AS EXHIBIT A,

For the Purpose of Securing payment in the sum of $340,000.00 per the Consent Judgment filed in *Su v. Special Unit Security*, et al., Case No. 2:24-cv-10854 (C.D. Cal.), with interest thereon according to the terms of said Consent Judgment herewith made by Trustor payable to order of the Beneficiary, and extensions or renewals thereof.

To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust hereby, that provisions (1) to (14), inclusive, excluding (10), of the fictitious deed of trust recorded in Los Angeles County, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 435 | 684 | Imperial | 1091 | 501 | Modoc | 184 | 851 | San Diego | | | Solano | 1105 | 182 |
| Alpine | 1 | 250 | Inyo | 147 | 598 | Mono | 52 | 429 | Series 2 | 1961 | 183887 | Sonoma | 1851 | 689 |
| Amador | 104 | 348 | Kern | 3427 | 60 | Monterey | 2194 | 538 | San Francisco | A332 | 905 | Stanislaus | 1715 | 456 |
| Butte | 1145 | 1 | Kings | 792 | 833 | Napa | 639 | 86 | San Joaquin | 2470 | 311 | Sutter | 572 | 297 |
| Calaveras | 145 | 152 | Lake | 362 | 39 | Nevada | 305 | 320 | San Luis Obispo | 1151 | 12 | Tehama | 401 | 289 |
| Colusa | 296 | 617 | Lassen | 171 | 471 | Orange | 5889 | 611 | San Mateo | 4078 | 420 | Trinity | 93 | 366 |
| Contra Costa | 3978 | 47 | Los Angeles | T2055 | 899 | Placer | 895 | 301 | Santa Barbara | 1878 | 860 | Tulare | 2294 | 275 |
| Del Norte | 78 | 414 | Madera | 810 | 170 | Plumas | 151 | 5 | Santa Clara | 5336 | 341 | Tuolumne | 135 | 47 |
| El Dorado | 568 | 456 | Marin | 1508 | 339 | Riverside | 3005 | 523 | Santa Cruz | 1431 | 494 | Ventura | 2062 | 386 |
| Fresno | 4626 | 572 | Mariposa | 77 | 292 | Sacramento | 4331 | 62 | Shasta | 684 | 528 | Yolo | 653 | 245 |
| Glenn | 422 | 184 | Mendocino | 579 | 530 | San Benito | 271 | 383 | Sierra | 29 | 335 | Yuba | 334 | 486 |
| Humboldt | 657 | 527 | Merced | 1547 | 538 | San Bernardino | 5567 | 61 | Siskiyou | 468 | 181 | | | |

(which provisions identical in all counties, are printed on Exhibit A attached to this form) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length; that said Trustor will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.

The Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to her at her address herein before set forth.

_____        _____
Signature of Edmon Muradyan, Trustor              Date

_____        _____
Signature of Lusine Kalemdaryan, Trustor           Date

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California                                        )
County of _____ )

On _____ before me, _____,

                                                NAME                                              TITLE

personally appeared _____

                                    NAMES OF TRUSTORS

who proved to me on the basis of satisfactory evidence to be the person(s) whose names(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signatures(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _____

**Exhibit 'A'**

## Legal Description

A.P.N.: 2812-103-007

Real property in the unincorporated area of the County of Los Angeles, State of California, described as follows:

PARCEL 1

LOT 43 OF TRACT NO 31803-01, AS SHOWN BY MAP ON FILE IN BOOK 1308, PAGES 53 THROUGH 64, INCLUSIVE OF MAPS, ON FILE IN THE OFFICE OF THE COUNTY RECORDER OF LOS ANGELES COUNTY, CALIFORNIA.

EXCEPTING THEREFROM TO THE EXTENT NOT ALREADY RESERVED BY INSTRUMENTS OF RECORD.

A. ALL OIL RIGHTS, MINERAL RIGHTS, NATURAL GAS RIGHTS AND RIGHTS TO ALL OTHER HYDROCARBONS BY WHATSOEVER NAME KNOWN TO ALL GEOTHERMAL HEAT AND TO ALL PRODUCTS DERIVED FROM ANY OF THE FOREGOING (COLLECTIVELY "SUBSURFACE RESOURCES")

B. THE PERPETUAL RIGHT TO DRILL, MINE, EXPLORE AND OPERATE FOR AND TO PRODUCE, STORE AND REMOVE ANY OF THE SUBSURFACE RESOURCES ON OR FROM THE LOT, INCLUDING THE RIGHT TO WHIPSTOCK OR DIRECTIONALLY DRILL AND MINE FROM LANDS OTHER THAN THE LOT, WELLS. TUNNELS AND SHAFTS INTO, THROUGH OR ACROSS THE SUBSURFACE OF THE LOT; AND TO BOTTOM SUCH WHIPSTOCKED OR DIRECTIONALLY DRILLED WELLS, TUNNELS AN D SHAFTS WITHIN OR BEYOND THE EXTERIOR LIMITS OF THE LOT, AND TO REDRILL, RETUNNEL EQUIP. MAINTAIN, REPAIR DEEPEN AND OPERATE ANY SUCH WELLS OR MINES. BUT WITHOUT THE RIGHT TO DRILL MINE, EXPLORE, OPERATE, PRODUCE, STORE OR REMOVE ANY OF THE SUBSURFACE RESOURCES THROUGH OR IN THE SURFACE OR THE UPPER FIVE HUNDRED FEET (5001) OF THE SUBSURFACE OF THE LOT. AND

C. ALL WATER AND WATER RIGHT. IF ANY, WITHIN AND UNDERLYING THE LOT.

PARCEL 2

A NON-EXCLUSIVE EASEMENT IN COMMON WITH OTHER OWNERS, FOR ACCESS INGRESS AND EGRESS OVER, IN TO AND THROUGH THE COMMUNITY ASSOCIATION PROPERTY DESCRIBED IN THE COMMUNITY DECLARATION, SUBJECT TO THE LIMITATIONS SET FORTH THEREIN, WHICH BASEMENT S APPURTENANT TO THE RESIDENTIAL LOT DESCRIBED ABOVE.

# DO NOT RECORD THIS PAGE

**To Protect the Security of This Deed of Trust, Trustor Agrees:**

(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire, vandalism and malicious mischief insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor.

Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice. The provisions hereof are subject to the mutual agreements of the parties as below set forth.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed of Trust.

(4) To pay; at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; subject to the mutual agreements of the parties as below set forth, to pay when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior to superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, the Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may; make or do the same in such manner and to such extent as either may deed necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his reasonable fees.

(5) To pay immediately and without demand all sums so expended by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

(6) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him in the same manner and with the same effect as above provided for disposition of proceeds of fire or other insurance. The provisions hereof are subject to the mutual agreements of the parties as below set forth.

(7) That by accepting payment of any sum secured hereby after its due date, Beneficiary doe not waive his right either to require prompt payment when due of all other sums so secured or to declare default for failure to pay.

(8) That at any time from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may; recovey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(9) That upon written request of the Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall recovey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The guarantee in such reconveyance may be described as "the person or persons legally entitled thereto." Five years after issuance of such full reconveyance, Trustee may destroy said note and this Deed unless directed in such request to retain them.

(10) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, an without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his own name sue for or otherwise collect such rents, issues and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(11) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may be determined, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed or any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of Title in connection with sale, Trustee shall apply the proceeds of sale to payment of; all sums expanded under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(12) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(13) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors and assigns. The term Beneficiary shall mean the owner and holder, including pledges, of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular includes the plural.

(14) That Trustee accepts this Trust when this Deed, duly executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

_____                    _____
Signature of Edmon Muradyan, Trustor                                              Date

_____                    _____
Signature of Lusine Kalemdaryan, Trustor                                          Date